UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ERNEST WILSON                                    CIVIL ACTION NO. 09-cv-1065

VERSUS                                           JUDGE HICKS

WARDEN, LOUISIANA STATE                          MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

Caddo Parish judge Jeanette Garrett conducted a bench trial and found Ernest Ray Wilson, Jr. ("Petitioner") guilty of armed robbery and simple escape. The State filed an habitual offender bill of information to seek enhancement of the penalty. The court adjudicated Petitioner a second-felony offender and imposed a sentence of 60 years for the armed robbery conviction and five years for the simple escape conviction, with the sentences to be served consecutively.

Petitioner filed a direct appeal and challenged his sentence as excessive. State v. Wilson, 867 So.2d 988 (La. App. 2d Cir. 2004). He then pursued several issues in a post-conviction application. He now seeks federal habeas relief. For the reasons that follow, it is recommended that his petition be denied.

### Relevant Facts

Petitioner does not contest the basic facts recited by the state appellate court. They show that at about 4:25 one afternoon in November 2002, Petitioner entered the Continental

Baking Company, located on Hollywood Avenue in Shreveport, Louisiana. He approached the counter and  pretended to purchase a package of hotdog buns. When the manager, Sarah Connell, opened the cash register, Petitioner held a knife against Connell's throat. He then took money from the cash register drawer, later calculated to be $84, and fled in a green 2002 Oldsmobile Alero. The cashier pressed the panic button and dialed 911.

When the Shreveport Police Department officers arrived, Connell informed them that the armed robbery had been recorded by the store's video surveillance camera. She also stated that she had seen some of the numbers on the license plate of the car in which Petitioner left.

Officer T.A. Bell heard a radio broadcast of the crime that included a description of the robber and his car. Bell pulled into a driveway behind a car that matched the description of the suspect's car. After a brief discussion with the driver, Bell noticed that the passenger in the car fit the description of the suspect from the armed robbery. The individual was later identified as the Petitioner, Ernest Ray Wilson, Jr.

Petitioner attempted to escape, but he was restrained, advised of his Miranda rights, arrested for the robbery, and transported to the Violent Crimes Unit at the Shreveport Police Department. He then waived his Miranda rights and gave a recorded confession to the armed robbery; he admitted that he was the man shown on the store's surveillance videotape.

As the officers moved Petitioner from the interrogation room into the hallway, Petitioner asked if he could use the bathroom. Detective Parker told Petitioner that he would be escorted to the bathroom. Petitioner took the opportunity to run down the hallway to the

back door and flee the building. Parker and another officer pursued, repeatedly ordering Petitioner to stop. Petitioner was finally apprehended by Detective Hinderberger. He was taken back to the Violent Crimes Unit and charged with simple escape. Throughout these events, Petitioner was uncooperative, combative, and threatened the officers.

**AEDPA Standard of Review**

The state courts denied Petitioner's claims on the merits. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Petitioner has a heavy burden under Section 2254(d). "If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). The statute "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

**Waiver of Jury**

Petitioner argued in his post-conviction application that he did not knowingly and intelligently waive his constitutional right to a jury trial.  The argument was presented solely in terms of state law (Tr. 234-35), so it is questionable whether Petitioner exhausted his state court remedies with respect to a federal claim that is cognizable in habeas.  Baldwin v. Reese, 124 S.Ct. 1347 (2004).  In any event, the claim lacks merit.

Defense counsel informed the court that Petitioner "tells me that he wishes to waive his jury trial."  Counsel said the first time she heard of the proposed waiver was that morning, but she had spoken with Petitioner about it to ensure that he understood what the waiver would mean.  She added that Petitioner "tells me that he does understand and that he is ready for a colloquy with the Court about waiving the jury trial."  Tr. 256.

The judge noted that it was 9:25 the morning the case was set for jury trial, and the venire was present in the courthouse.  But Petitioner had advised his attorney "that he now wants to waive his right to have a trial by a jury and he wants to have a bench trial."  The court explained that this was discretionary with the court and that she would have a colloquy with Petitioner to make sure he "understands what he is doing" and that he is making a knowing and intelligent waiver of his right to trial by jury.  She added that there would be no misunderstanding that this would result in a continuance.  "We will have this trial today." Tr. 256-57.

Petitioner was placed under oath and questioned by the court.  He said that he completed the eleventh grade and could read and write.  The judge told Petitioner that his attorney could advise him regarding whether it was in his interest to waive the jury trial, but

the decision was his alone.  The judge went on to explain that Petitioner had an absolute right to have a jury determine the charges against him of armed robbery and simple escape.  She explained how many jurors must concur to render a verdict, and she emphasized that both charges would be tried together.  Petitioner indicated that he understood these facts, as well as that the judge alone would decide whether he was guilty of those charges or lesser offenses or not guilty should he waive his right to a jury.  Petitioner was asked if, having considered all of these things, he wished to waive his right to a trial by jury on the charges of armed robbery and simple escape.  Petitioner replied affirmatively, and the court accepted the waiver.  Tr. 258-60.

Petitioner filed a supplement to his post-conviction application (Tr. 266-69) in which he argued that the two crimes were not properly joined under Louisiana law and that he was not aware that he could have obtained a six-person jury on the escape charge and 12-person jury on the robbery charge.  He stated that had he possessed that understanding he would not have waived his right to a jury.  The trial court noted that there had been no timely motion to quash on the grounds of improper joinder and that the offenses were "definitely related" so that it was within the trial judge's great discretion to try the crimes jointly. Thus, Petitioner did not establish any prejudice in this regard.  Tr. 285.  The state appellate court issued a one-paragraph opinion that stated the application had been considered but Petitioner "has failed to meet his burden of proving that relief should be granted."  Tr. 335.  The Supreme Court of Louisiana denied writs without comment.

The Supreme Court has recognized that persons charged with a felony in state courts have a right to a jury trial, but they also have the right to waive trial by jury. Generally, waiver of a constitutional right must be knowing and intelligent, and the court must indulge every reasonable presumption against waiver of fundamental constitutional rights. The Fifth Circuit applied these principles in Scott v. Cain, 364 Fed. Appx. 850 (5th Cir. 2010) when the petitioner argued that his waiver was not knowing and intelligent because the trial judge did not hold a full colloquy to discuss the jury trial process.[1] The Court rejected the claim because, among other reasons, the Supreme Court has not clearly established whether the

---

[1] The judge in Scott held an off-the-record bench conference with the prosecutor and defense counsel. The following exchange, which led to Scott's Sixth Amendment claim, followed:

BY THE COURT:
All right.

Sir, you have a right to be tried before a Judge or a Jury.

Make your selection.

BY THE DEFENDANT:

Judge, Your Honor.

BY THE COURT:

All right.

You want a judge trial.

Are we prepared to go forward with this trial now?

(Counsel indicated they were ready, and the trial began.)

lack of a full colloquy invalidates an otherwise voluntary waiver.   An objectively

unreasonable application of such a rule is required to merit habeas relief on the claim, but

when the Supreme Court has not spoken clearly on the issue habeas relief is very difficult to

obtain. Lockyer v. Andrade, 123 S.Ct. 1166, 1172-73 (2003).

Petitioner in this case received a much more thorough colloquy than the prisoner in

Scott.  The record establishes a knowing and intelligent waiver made with the advice of

counsel.  There is nothing in the state-court record or common sense to support a reasonable

likelihood that, had counsel told Petitioner about the possibility of obtaining separate trials

with different forms of juries, Petitioner would have suddenly changed his mind about the

waiver. This claim, as was the one in Scott, should be denied.  See also Hargrave v. Lege,

2010 WL 1930594, **10-11 (W.D. La. 2010)[2] (rejecting a similar jury waiver claim) and

Pierre v. Leger, 2011 WL 2559879, **6-7 (W.D. La. 2011)[3] (state-court ruling that counsel

can waive the right to a jury trial on behalf of his client when the record indicates that the

client's assent has been knowingly given was not objectively unreasonable).  Petitioner has

not met his heavy burden under Section 2254(d) of showing that the state court's resolution

of this issue was an objectively unreasonable application of law clearly established by the

Supreme Court.

---

[2] Magistrate Judge Hanna's Report and Recommendation was adopted by Judge
Doherty at Hargrave v. Leger, 2010 WL 1930955 (W.D. La. 2010).

[3] Magistrate Judge Hanna's Report and Recommendation was adopted by Judge
Haik at Pierre v. Leger, 2011 WL 2560267 (W.D. La. 2011).

**Right to Testify**

Petitioner argued in a post-conviction application that he told his counsel, during a break, that he wanted to testify and contest the allegations the victim made against him, explain how police obtained a false confession from him, and let the jury know he was under the influence of drugs and alcohol at the time he confessed.  He also wanted to testify that he never escaped but merely went in the wrong direction when he left the bathroom.  He says that he also wanted to testify that the police officers beat him and told him that they would release him if he admitted he took the money and agreed to pay it back.  Tr. 224-29.

The record shows that, after the State rested, defense counsel told the court that she had conferred with Petitioner during a recent break to discuss the possibility of his testifying. "And he tells me that he does not wish to testify, and I agree with that decision."  The judge then addressed Petitioner directly and explained he had a constitutional right to testify at the trial and that the decision was one "you have to make yourself."  Petitioner affirmed that he had decided not to testify.  Tr. 261-62.  The trial court denied this claim on post-conviction because the transcript showed that Petitioner was adequately advised of his right to testify. Tr. 284.

Every criminal defendant has the right to testify on his own behalf.  Rock v. Arkansas, 107 S.Ct. 2704 (1987).  Sometimes the record is silent on the issue, other times there is a statement by counsel or the defendant on the record, or sometimes a post-trial affidavit from counsel is required to resolve the issue.  See Sharp v. Warden, 2011 WL 4551166 *8-9 (W.D. La. 2011).  Petitioner contends that his trial attorney told him he could not testify

because of his prior convictions that the prosecutor would use against him.  Petitioner says that his counsel did not tell him that the prosecutor could impeach him with the names of the prior crimes but could not explore the specifics of them. (Louisiana Code of Evidence article 609.1(C) provides that the details of convictions are "ordinarily" not admissible, but there are three listed exceptions.) Had he known the specifics were inadmissible, Petitioner represents, he would have testified.

Petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011); Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).  He has not pointed to any evidence in the state court record that would support his bold assertions. On the other hand, the record does contain Petitioner's clear and unequivocal waiver of his right to testify. He has not satisfied his burden to obtain relief on this claim.

**Confession**

Petitioner argued in his post-conviction application (Tr. 232-34) that the trial court should not have admitted his confession because it was involuntary due to his intoxication, a beating by police officers, and a false promise that if he admitted the crime he would be required to pay $84 to the victim and then be released.  The trial judge held a "free and voluntary" hearing before the trial began.

Detective Shawn Parker testified that he and Detective Lane Smith, armed but in plain clothes, questioned Petitioner in Violent Crimes Unit office on the day of the crime.  The detectives moved Petitioner's handcuffed hands to his front, and they gave him a jacket

because he said he was cold.  Parker advised Petitioner of his <u>Miranda</u> rights, and Petitioner was able to follow along on a written form, which he signed twice to indicate that he understood and waived those rights.  Parker testified that Petitioner was not under duress of any kind, no promises were made to him, and Petitioner denied that he was under the influence of any alcohol or narcotic.  The recorded confession was played for the judge. Parker testified that he also heard Petitioner admit to his father that he was guilty of the armed robbery and simple escape.  Tr. 3-15.

The trial judge stated that she had carefully listened to Detective Parker's testimony, as well as the taped statement, and she found that the statement was given freely and voluntarily and that Petitioner was advised of his <u>Miranda</u> rights, which he indicated that he understood.  Accordingly, the statements were deemed admissible.  Tr. 16-17.

Judge Scott Crichton ruled on the post-conviction application that presented this claim.  He referred to the transcript of the free and voluntary hearing and Judge Garrett's conclusions on the credibility and weight of the testimony regarding the voluntary nature of the confession.  He denied the claim based on that evidence.  Tr. 284-85.  The appellate court denied a writ application, with a brief opinion that stated Petitioner "has failed to meet his burden of proving that relief should be granted" and that the record showed "the trial court did not err in denying these claims."  Tr. 335.  The Supreme Court of Louisiana denied writs without comment.

A confession must be voluntary to be admissible, and a judge must make a determination of voluntariness before the confession is admitted to the jury.  <u>Jackson v.</u>

Denno, 84 S.Ct. 1774 (1964).   A suspect also has a right, recognized by Miranda, to be informed of his right to remain silent when faced with custodial interrogation, but the suspect may waive that privilege if the waiver is made voluntarily, knowingly and intelligently. Miranda v. Arizona, 86 S.Ct. 1602, 1612 (1966).  A finding of a voluntary and valid Miranda waiver is usually tantamount to a conclusion that the resulting confession was also voluntary. Missouri v. Siebert, 124 S.Ct. 2601, 2608 (2004).

The inquiry whether a Miranda waiver is coerced has "two distinct dimensions." Moran v. Burbine, 106 S.Ct. 1135, 1141 (1986).  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.  Id.  Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it.  The totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the requisite level of comprehension for a court to properly conclude the Miranda rights were waived.  Id.  See also Colorado v. Spring, 107 S.Ct. 851, 857 (1987).

The record fully supports the trial judge's findings that Petitioner was informed of his Miranda rights and made a knowing and voluntary waiver of them.  There is simply no evidence to the contrary.  Petitioner claims that he was subjected to threats and promises, but there is not a scrap of evidence in the record to support these bold claims.  He contends that his confession was involuntary because he was intoxicated, but the only evidence on that point is Detective Parker's testimony that Petitioner *denied* being under the influence of

Page 11 of  19

intoxicants. Furthermore, mental impairment or intoxication are considerations in determining the voluntariness of a statement, but only when there is also official coercion. See Martinez v. Quarterman, 270 Fed. Appx. 277, 290 (5th Cir. 2008) (denying habeas claim of being intoxicated when giving a written confession) and Sosa v. Dretke, 133 Fed. Appx. 114, 119 (5th Cir. 2005) (denying habeas to petitioner who made statements when he had a mental impairment but in the absence of police coercion).  There is no evidence of police coercion. Petitioner is not entitled to relief on this claim.

**In-Court Identification**

Sarah Connell, the victim of the robbery, identified Petitioner at trial.  Petitioner argued in his post-conviction application that her prior out-of-court identifications of him were unduly suggestive and tainted the in-court identification.  A conviction based on an eyewitness identification at trial following a pretrial identification will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Coleman v. Quarterman, 456 F.3d 537 (5th Cir. 2006).

The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the

criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Coleman, supra, citing Neil v. Biggers, 93 S.Ct. 375 (1972). Unless the circumstances show "a very substantial likelihood of irreparable misidentification" then the identification is admissible, and its weight is for the jury to decide. Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

Ms. Connell testified that Petitioner entered the store with a coupon and initiated a purchase of some hot dog buns.  Ms. Connell rang up the buns, and Petitioner produced a dollar bill.  Connell opened the register to make change, and Petitioner drew a kitchen knife and brought it toward her neck.  He reached in the cash register drawer with his free hand, took the money, and ran.

Ms. Connell and another employee went to the window and saw Petitioner getting into a green Oldsmobile with the first two letters of the license plate KL.  They quickly called 911.  A policeman, within 30 minutes, told Ms. Connell he believed they had apprehended the suspect, and he took Connell to see if she could identify the man.

Ms. Connell was in the back of the patrol car, and it was raining and difficult to see, so she wasn't sure when they first approached the suspect because it "was pretty difficult to see him."   As the car moved closer, and her view improved, she was able to positively identify Petitioner as the robber.  She then identified him in court as well.  Tr. 40-46.

Defense counsel asked on cross-examination if Ms. Connell had at some time viewed a lineup in connection with the investigation.  She said that she did, and that she told the officer who presented her a photo lineup that she was not sure if the robber was in the lineup

because, at the time of the robbery, the robber had braids in his hair and a goatee.  The men in the photos did not have any facial hair or long hair.  Their hair was all very close cropped, and they were clean cut.  Ms. Connell said that she was not positive and did not want to make a mistake.  Tr. 54.

The trial court, when this issue was presented on post-conviction application, denied the claim with the observations that the victim identified the robber in and out of court, there was videotape to indicate that it was Petitioner who robbed the store, and Petitioner had admitted his guilt.  Tr. 284.  The principal concern about crime scene or "show up" identifications is that the victim will see the person who has been arrested, assume they are guilty, identify them as the perpetrator, and later point them out in the courtroom as the person who committed the crime.  Courts have nonetheless permitted testimony about such identifications.  See Livingston v. Johnson, 107 F.3d 297, 309-11 (5th Cir. 1997).  The evidence shows that Ms. Connell did not leap to the assumption that the man detained by police was the robber.  Rather, she did not make a positive identification until she was close enough to get a good look at him despite the heavy rain.  She later declined to identify anyone in a photo lineup because of her admitted uncertainty, given the difference in hairstyles.  These facts suggest a witness who was not unduly influenced by the original identification.  They indicate a conscientious witness whose courtroom identification was not unduly tainted.  The state court's rejection of this claim, based on the state court record, was not an objectively unreasonable application of clearly established federal law as established by the Supreme Court.

**Habitual Offender Adjudication**

Petitioner argues that the evidence was insufficient to adjudicate him a second felony offender because the State did not establish that he was advised of his <u>Boykin</u> right to a jury before he pleaded guilty to the first felony, unauthorized use of a movable.  Under Louisiana law, if the defendant denies the allegations of an habitual offender bill, the State must prove the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were entered.  <u>State v. Shelton</u>, 621 So.2d 769 (La. 1993).  If the State meets that burden, the defendant then has the burden to produce some affirmative evidence to show an infringement of his rights or procedural irregularity in the plea.  Only if the defendant meets that burden does the burden again shift to the State.  The State can then meet its burden by introducing a perfect transcript of the guilty plea that reflects a <u>Boykin</u> colloquy.  If the State introduces anything less than the perfect transcript, such as a guilty plea form or minute entry, the judge must weigh the evidence submitted by the parties and determine whether the State has met its burden of proving that the prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.  <u>Id</u>.

Petitioner offers general arguments that he was not advised at the time of his 1998 guilty plea that he had a right to trial by jury, and he argues that the bill of information from the prior conviction was not properly certified.  His contentions are not supported by the record.  The State offered at the hearing Exhibit S1, which included a certified copy of a bill of information, criminal case minutes, and guilty plea transcript from Case No. 195,419, in which Petitioner pleaded guilty to unauthorized use of a motor vehicle.  Tr. 97.  A fingerprint

Page 15 of  19

expert took Petitioner's prints in court, compared them to prints on the bill of information in the prior case, and testified that the prints were made by the same person.  Tr. 109-10.

Petitioner presented this claim in his post-conviction application.  The trial court denied it with the observation that the transcript of the prior plea showed that Petitioner was advised of and gave up his right to be tried by a judge or jury, the right to confront and cross-examine witnesses against him, and his right against compulsory self-incrimination.  Tr. 286. The transcript is in the record and supports the state court's conclusion.  Tr. 58-71.  Petitioner was represented by counsel and, despite Petitioner's assertions to the contrary, the trial judge told him that by pleading guilty he was "giving up your right to a trial before a judge or jury."  Petitioner stated that he understood.  Tr. 67.  This claim has no support in the record, so relief is not permitted under Section 2254(d).

**Transcript**

Petitioner repeats an argument he made in his post-conviction application in which he complained that the state court did not provide him with a copy of his trial transcripts.  He argued that he believed he could present claims that he was denied his right to a jury trial, denied the right to testify, the in-court identification was suggestive, and that his confession was inadmissible.  He asked for additional time to supplement his post-conviction application after receiving the trial and habitual offender transcripts.  The state court denied the claim, noting that Petitioner was represented by counsel who pursued a direct appeal, and the denial of a free trial transcript was not grounds for post-conviction relief.  Tr. 283.

Petitioner was able, despite his complaints about lack of a transcript, to make all of the arguments he listed.  They were found to lack merit in the post-conviction application and in this habeas review, which was done with the benefit of a full record.  Petitioner has not established any prejudice to a constitutional right in connection with this claim, so it is not a basis to set aside his conviction.

**Ineffective Appellate Counsel**

Petitioner argues that the single issue, excessive sentence, that appellate counsel Kenota Pulliam Johnson pursued was frivolous given that his 60-year sentence fell well within statutory range for a second-felony offender.  A first armed robbery conviction, alone, has a maximum sentence of 99 years.  He contends that counsel should have pursued other issues, such as denial of the right to testify, insufficiency of evidence at the habitual offender hearing, suggestive in-court identification, involuntary confession, and invalid waiver of jury trial.

Persons convicted of a crime are entitled to effective assistance of counsel on their first appeal of right.  Evitts v. Lucey, 105 S.Ct. 830 (1985).  Counsel's performance on appeal is judged under the familiar two-prong Strickland test. On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available.  It means counsel who will perform in a reasonably effective manner.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts).  When a petitioner claims that

counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. <u>Smith v. Robbins</u>, 120 S.Ct. 746, 764 (2000); <u>Moreno v. Dretke</u>, 450 F.3d 158, 168 (5th Cir. 2006).

The court has reviewed all of the issues listed by Petitioner that he believes counsel should have pursued. None of them has any merit, even under a de novo standard of review. Counsel could perhaps have come up with a few other issues to pursue on appeal, but the State's case showed overwhelmingly that Petitioner was guilty. Petitioner has had years in which to identify a claim that might have prevailed on appeal, but he has yet to identify one. He has not shown that counsel omitted an issue that, had it been raised, there was a reasonable probability he would have won on appeal. Habeas relief, therefore, is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).   Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of July, 2012.


MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE